NOT DESIGNATED FOR PUBLICATION

No. 118,550

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

WASSE ZAFER and ZAFER CHIROPRACTIC & SPORTS INJURIES, INC.,
*Appellants*,

v.

ANDY HERMANN; FARMERS INSURANCE COMPANY, INC.; FARMERS GROUP, INC.; and
FARMERS INSURANCE EXCHANGE,
*Appellees*.

MEMORANDUM OPINION

Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed May 25, 2018. Affirmed.

*P. Dan Calderon*, of Calderon Law LLC, of Prairie Village, for appellants.

*Melody L. Rayl*, of Fisher & Phillips LLP, of Kansas City, Missouri, for appellees.

Before ATCHESON, P.J., PIERRON and STANDRIDGE, JJ.

PER CURIAM:  Wasse Zafer and Zafer Chiropractic & Sports Injuries, Inc. (collectively Zafer) appeal the district court's decision barring Zafer's claims against Andy Hermann; Farmers Insurance Company, Inc.; Farmers Group, Inc.; and Farmers Insurance Exchange (collectively Farmers) under the doctrine of res judicata. Zafer previously filed the same claims against the same parties in Missouri. The Lincoln County, Missouri trial court entered judgment on the pleadings against Zafer. The Missouri Court of Appeals for the Eastern District upheld the decision on appeal. *Zafer Chiropractic & Sports Injuries, P.A. v. Hermann*, 501 S.W.3d 545 (Mo. App. 2016).

1

Because the Missouri judgment was a final decision on the merits, we affirm the district court's decision finding the claims in this action are precluded by res judicata.

FACTS

Wasse Zafer was the sole owner and operator of Zafer Chiropractic & Sports Injuries, Inc. Zafer originally filed suit against Farmers in February 2012 in Cole County, Missouri. Some of Zafer's patients were insured by Farmers' automobile insurance policies, which provided personal injury protection coverage and/or medical payments coverage. Zafer alleged that some of those insured patients executed an assignment of benefits agreement, which assigned their right to insurance payments from Farmers to Zafer in exchange for treatment. Zafer's petition sought payments under the benefits agreements. It also alleged several tortious acts against Farmers, including that Farmers: attempted to undervalue and deny insurance claims, contacted Zafer's "Hispanic and/or Spanish-speaking patients" and threatened to contact "immigration" if they did not assist in filing complaints against Zafer, and filed false complaints about Zafer to Kansas criminal and administrative entities. The petition claimed that these actions caused Zafer's business to become financially insolvent.

In December 2012, the Cole County trial court dismissed Zafer's action without prejudice based on the doctrine of *forum non conveniens*. The court held that Missouri was an inconvenient forum because "[t]he nexus between Kansas and the claims is far more significant than with Missouri" and because the claims would be governed by Kansas substantive law.

In May 2013, Zafer filed an almost identical petition in Jackson County, Missouri, based on the same allegations against Farmers. Farmers filed a motion for judgment on the pleadings. Zafer then amended his petition, which asserted five counts against

2

Farmers: breach of contract, tortious interference with business expectancy and business disparagement, abuse of process, negligence, and breach of fiduciary duties.

In July 2015, the case was transferred to the trial court in Lincoln County, Missouri. On December 16, 2015, the Lincoln County court granted Farmers' motion for judgment on the pleadings. Applying a conflict of laws analysis, the court used Kansas substantive law (since the claims had the most significant relationship with Kansas) and used Missouri's procedural rules. In Missouri, a "fact pleading" state, a plaintiff must state sufficient facts demonstrating he or she is entitled to the relief sought in the petition. The court held that Zafer's breach of contract and tortious interference with a business expectancy claims failed to plead sufficient facts to state a claim under the Missouri pleading rule. The court also dismissed Zafer's negligence and breach of fiduciary duty claims, which were both based on the assignment of benefits agreement. The court explained that those claims were either contract based and, therefore, insufficiently pled for the same reason as the breach of contract claim, or tort based and, therefore, improper as a matter of law because tort claims are not assignable under Kansas law. Finally, the court rejected Zafer's abuse of process claim, which was based on allegations that Farmers initiated investigations and administrative hearings with Kansas state agencies because abuse of process pertains only to judicial, not administrative, proceedings in Kansas.

Zafer appealed to the Missouri Court of Appeals for the Eastern District. The appellate court affirmed the Lincoln County trial court, holding that even if "all pled facts are true, after disregarding all conclusions pled without factual support, [Zafer] failed to establish they would be entitled to relief for any claim alleged." *Zafer Chiropractic & Sports Injuries, P.A.*, 501 S.W.3d at 556. The appellate court agreed with the trial court that Zafer failed to allege specific facts sufficient to state a breach of contract cause of action under Kansas substantive law. The court additionally held that Zafer's breach of contract claim failed because the assignment of benefits agreement assigned only to the

3

right to payment, not the right to bring a breach of contract claim on behalf of the insureds. 501 S.W.3d at 552-53. The appellate court upheld the trial court's reasoning on Zafer's other claims: Zafer did not plead sufficient facts to demonstrate tortious interference with a business expectancy; Zafer's abuse of process claim was based on investigations and administrative hearings, but Kansas law provides remedy only for abuse of *judicial* proceedings; and Zafer's allegations of negligence and breach of fiduciary duty were tort claims, which are not assignable under Kansas substantive law. 501 S.W.3d at 552-56.

In February 2017, Zafer filed a petition in Johnson County, Kansas, based on the same factual allegations and making the same claims against Farmers. Farmers filed a motion to dismiss based on res judicata, a doctrine that precludes a party from filing the same claims that were previously determined on the merits in earlier litigation against the same parties. The Johnson County District Court granted Farmers' motion, holding that Zafer could not bring the same cause of action in Kansas. The Johnson County District Court stated:

> "There is no existing authority in Kansas on the issue of whether a dismissal
> based on Missouri's fact pleading standard constitutes a final judgment on the merits for
> purposes of *res judicata* in Kansas. Under the Full Faith and Credit Clause of the United
> States Constitution, a judgment in Missouri 'cannot be impeached for irregularities in the
> proceedings or erroneous rulings, but must be regarded as binding, until set aside by the
> court rendering it, or by a reviewing court on appeal.' *Padron v. Lopez*, 289 Kan. 1089,
> 1098, 220 P.3d 345 (2009) (quoting *Littlefield v. Paynter*, 111 Kan. 201, 205, 206 [P.]
> 1114 [1922]). Indeed, Kansas law is clear that even state law claims dismissed without
> prejudice by the prior court determination are nonetheless precluded under the claim
> preclusion doctrine, harsh though that result might be. *Stanfield*[ *v. Osborne Industries,
> Inc.*,] 263 Kan. [388,] 404, 949 P.2d 602 [1997] (expressly affirmed by *Rhoten*[ *v.
> Dickson*], 290 Kan. [92,] 112[, 223 P.3d 786 (2010)]). While this Court may wish to
> allow Plaintiffs the opportunity to replead their claims under the more liberal Kansas
> notice pleading standard, there is no existing authority for this Court to find that a

dismissal of claims under Missouri's fact pleading standard does not constitute a determination on the merits as to those same claims if refiled under Kansas' notice pleading standard. Thus, in the absence of any such authority, this Court must give full faith and credit to the Missouri judgment, which has a preclusive effect and bars Plaintiffs' claims in the present case by *res judicata*."

Zafer timely appealed.

ANALYSIS

The doctrine of res judicata—also called "claim preclusion"—bars a party from relitigating claims that already have been decided on the merits. *Stanfield v. Osborne Industries, Inc.*, 263 Kan. 388, 396, 949 P.2d 602 (1997). It is a judicially created doctrine founded on considerations of judicial economy and public policy favoring certainty and finality in the law. Res judicata protects litigants from the cost and aggravation of multiple lawsuits on the same claims or claims that could have been brought in a prior suit. 263 Kan. at 397.

In his sole issue on appeal, Zafer argues that the district court erroneously barred the claims in his Kansas petition under the doctrine of res judicata. Whether res judicata applies to a case is a question of law over which this court exercises unlimited review. *In re Tax Appeal of Fleet*, 293 Kan. 768, 777, 272 P.3d 583 (2012); *Stanfield*, 263 Kan. at 396.

To establish res judicata, four elements must be present: (1) the same claim, (2) the same parties, (3) the claim was or could have been raised, and (4) a final judgment on the merits. *In re Tax Appeal of Fleet*, 293 Kan. at 777-78. Here, there is no dispute that Zafer previously filed suit against the same parties for the same claims and the Missouri trial court entered a final judgment that was affirmed by the Missouri Court of Appeals.

5

The only disputed issue is whether the Missouri judgment on the pleadings was "on the merits."

Zafer argues that the Missouri judgment was not on the merits because it was based on the sufficiency of the pleadings under Missouri's heightened pleading standard, which would not apply in Kansas. Missouri's fact-pleading statute requires that a petition contain a "short and plain statement of the facts showing that the pleader is entitled to relief." Mo. Rev. Stat. § 55.05 (2016); see also *Ford Motor Credit Co. v. Updegraff*, 218 S.W.3d 617, 621 (Mo. App. 2007) (petition must plead "ultimate facts" showing entitlement to relief sought and may not rely on mere conclusions). In contrast, Kansas' notice-pleading standard requires only "a short and plain statement of a claim that will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Rinsley v. Frydman*, 221 Kan. 297, 302, 559 P.2d 334 (1977); see K.S.A. 2017 Supp. 60-208(a)(1); see also *Oller v. Kincheloe's, Inc.*, 235 Kan. 440, 447, 681 P.2d 630 (1984) ("It is not necessary to spell out a legal theory of relief so long as an opponent is apprised of the facts that entitle plaintiff to relief."). Zafer's position is that this court should not consider the Missouri judgment a final judgment on the merits under Kansas law because Zafer's petition would have survived Kansas' more liberal pleading standards.

But we do not determine the legal effect of a judgment by asking what would have happened had the suit been filed in our own courts; we look to the law of the state that rendered the judgment. Under the Full Faith and Credit Clause of the United States Constitution, Article 4, Section 1, a judgment rendered by the courts of one state is entitled in the courts of another state to the same force and effect the judgment has according to the law of the state where the judgment was rendered. *Fisher v. Kipp*, 177 Kan. 196, 197-98, 277 P.2d 598 (1954); see also *Padron v. Lopez*, 289 Kan. 1089, 1096, 220 P.3d 345 (2009) ("As a general rule, when a properly authenticated judgment of a state other than Kansas is offered as evidence in a Kansas court, the Full Faith and Credit

Clause . . . gives the foreign judgment the same force and effect in Kansas as it has in the state where the judgment was rendered."). "In an action on a foreign judgment, its nature, validity, and finality are to be tested by the law of the jurisdiction where the judgment was rendered." *Johnson Brothers Wholesale Liquor Co. v. Clemmons*, 233 Kan. 405, Syl. ¶ 3, 661 P.2d 1242 (1983) (looking to Minnesota law to determine whether second Minnesota judgment was new judgment or extension of statutory period in which to impose original Minnesota judgment); see also *Baker v. Erbert*, 199 Kan. 59, 62, 427 P.2d 461 (1967) (looking to Colorado law to determine whether fraud induced defendant to forego his defense as basis for challenging the original Colorado judgment); *Hankin v. Graphic Technology, Inc.*, 43 Kan. App. 2d 92, 99, 222 P.3d 523 (2010) (looking to Pennsylvania law to determine whether judgment by confession should continue to be recognized after defendant moved to "open" judgment in Pennsylvania).

So we must look to the law of Missouri, the state in which the judgment was rendered, to determine the nature of the judgment in this case. In Missouri, when a party files a motion for judgment on the pleadings, the court considers all facts pled, and reasonable inferences that can be drawn from the facts, in the plaintiff's favor. If the plaintiff cannot prevail under any legal theory after the pleadings are closed, judgment is entered as a matter of law on the pleadings. *In re Marriage of Busch*, 310 S.W.3d 253, 260 (Mo. App. 2010). "[A] motion for judgment on the pleadings contemplates a final judgment on the merits." 310 S.W.3d at 260; see also *Essen v. Adams*, 342 Mo. 1196, 1204, 119 S.W.2d 773 (1938) ("Ordinarily a motion for a judgment on the pleadings contemplates a judgment on the merits."); *Bank of New York v. Yonts*, 388 S.W.3d 560, 561 (Mo. App. 2012) (same).

The Missouri judgment is entitled to full faith and credit in Kansas. Missouri courts would not allow Zafer to bring the same claims against Farmers in its courts; thus, Kansas courts must give it the same force and effect. The Johnson County District Court

did not err in giving the Missouri judgment preclusive effect under the Full Faith and Credit Clause.

Zafer seeks an exception to the regular application of res judicata, contending that the Missouri fact-pleading rule prevented him from receiving a full and fair opportunity to litigate his claims because his petition would have been sufficient under Kansas' notice-pleading rules. While Kansas' law of res judicata does not specifically require a court to examine whether the plaintiff had a full and fair opportunity to litigate, federal courts have considered that factor in exceptional cases. Zafer urges this court to find that this is such an exceptional case and adopt the federal analysis. We decline to do so.

Federal courts preclude claims under res judicata if the following three elements are met: (1) There is a final judgment on the merits in an earlier action; (2) the same parties are involved in the two suits; and (3) there is the same cause of action in both suits. *Rhoten v. Dickson*, 290 Kan. 92, 106, 223 P.3d 786 (2010).

> "The majority of federal courts, including the United States Supreme Court and the Tenth Circuit, recognize an exception if the party seeking to avoid preclusion did not have a full and fair opportunity to litigate the claim in the prior suit. Although some courts treat this exception as a fourth element, the Tenth Circuit agrees it is an exception that only needs to be addressed in limited circumstances. *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 n.4 (10th Cir. 1999)." *Rhoten*, 290 Kan. at 106.

To determine whether a claim was fully and fairly litigated under the exception, federal courts consider the following factors: (1) whether there were significant procedural limitations in the prior proceeding; (2) whether the party had the incentive to fully litigate the issue; and (3) whether effective litigation was limited by the parties' nature or relationship. *Rhoten*, 290 Kan. at 110-11 (citing *Burrell v. Armijo*, 456 F.3d 1159, 1172 [10th Cir. 2006]). The exception is exceedingly narrow and inapplicable here.

8

Zafer cites three cases in which federal courts analyzed the exception he seeks. Those cases—which examined prior judgments issued by foreign or tribal courts—used an analysis entirely different from cases in which one state's courts must give full faith and credit to another state court's judgment. Moreover, the cases Zafer cites actually demonstrate how significant the procedural differences must be from the practices of domestic courts for a party to lack a full and fair opportunity to litigate. Those cases do not control here.

In *Gordon and Breach Science Publishers S.A. v. American Institute of Physics*, 905 F. Supp. 169 (S.D.N.Y. 1995), one of the plaintiffs unsuccessfully sued the defendants in Switzerland and Germany prior to bringing suit in New York federal court. The New York federal district court noted the "well-established" rule that "United States courts are not *obliged* to recognize judgments rendered by a foreign state, but may *choose* to give res judicata effect to foreign judgments on the basis of comity." 905 F. Supp. at 178-79. The court refused to bar issues in the foreign judgments, citing "civil law procedural differences" (without discussion of what the procedural differences were) as one out of six "principles of fairness and reasonableness" it considered in its comity analysis. 905 F. Supp. at 179.

Similarly, in *Haung Tang v. Aetna Life Ins. Co.*, 523 F.2d 811, 812 (9th Cir. 1975), the Ninth Circuit Court of Appeals refused to give preclusive effect to a Taiwanese criminal judgment. Seeking proceeds from his wife's life insurance policy, Jaw-Mann Jong argued in California federal court that he was temporarily insane at the time he killed his wife. The alternate beneficiary sought to preclude Jong from relitigating the issue of his sanity because a Taiwanese criminal court had previously determined that he was not insane at the time of the murder. The Ninth Circuit refused to apply issue preclusion because the Taiwanese substantive criminal and procedural law differed significantly from California law: It was unclear from the record whether the defense of legal insanity was the same in Taiwanese criminal law as in California law,

9

and the Taiwanese high court refused Jong's request to be examined by a psychiatrist, which would have been granted in California. 523 F.2d at 813-14.

Third, in *Burrell*, 456 F.3d 1159, the plaintiffs sued the Pueblo Indian tribe and some of the tribe's leaders in Santa Ana Tribal Court. After a period of four years, during which the tribal court took no action, it dismissed the plaintiffs' claims as barred by sovereign immunity. The plaintiffs refiled their claims in federal court. The Tenth Circuit Court of Appeals refused to preclude the plaintiffs' claims, citing the close relationship between the tribal court and the tribal leader defendants, the fact that the tribal court judgment did not cite any evidence or testimony, and the lack of appellate review available to the plaintiffs in the tribal court system. 456 F.3d at 1173.

None of these cases guide this court's analysis here, where the Full Faith and Credit Clause requires recognition of judgments rendered by the courts of other states. Zafer contends that the "the difference between the pleading standards in Kansas and Missouri is the very type of procedural limitation contemplated by the federal court analysis." But the difference in pleading standards is not analogous to the significant procedural differences discussed in *Huang Tang*, where the defendant was not entitled to present the same evidence and where the issue may not have been governed by a similar substantive law, or in *Burrell*, where there was no authority or legal explanation for the court's ultimate decision and no right to appeal. And unlike in *Burrell*, Zafer does not claim that the litigation was limited by the parties' relationship. Although Missouri has a more stringent pleading standard than Kansas, it did not deprive Zafer the opportunity to fully and fairly litigate his claims against Farmers. Zafer has not provided a convincing case to adopt the federal exception here.

Finally, Zafer cites *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979), a case in which the *plaintiff* sought to preclude the defendant from litigating an *issue* on which the defendant had lost in prior litigation brought by *another*

10

*party*. The United States Supreme Court noted that such "offensive use of issue preclusion" may be unfair to a defendant for several reasons: The defendant may have little incentive to defend the prior litigation vigorously if only nominal damages are at stake or if future suits are not foreseeable; the prior judgment may be inconsistent with another judgment in favor of the defendant; and the second action might afford procedural opportunities unavailable to the defendant in the first action—such as an inconvenient forum that made it difficult for the defendant to engage in full-scale discovery or call witnesses. 439 U.S. at 329-31 & n.15.

*Parklane Hosiery Co.* does not control here. The procedural posture of this case is very different from offensive issue preclusion and does not raise the same concerns. Here the question is whether the district court properly applied defensive claim preclusion: Farmers, the defendant, sought to avoid litigating the same claims brought by the same parties that were previously determined by the Missouri courts. Zafer, the plaintiff in this action, chose to bring suit in Missouri (twice), even after the action was dismissed for *forum non conveniens* by the Cole County court because of the suit's relationship to Kansas. There is no reason to believe that Zafer had less of an incentive to fully liltigate the suit it brought in Missouri as it did in this suit. Thus, this case does not present the same concerns that Zafer was forced to litigate in an unfair forum as were discussed in *Parklane Hosiery Co*.

Affirmed.